United States District Court
Southern District of Texas

**ENTERED**

October 19, 2023

Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT 7
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| KEITH MARTIN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 21-3836 |
| V. | § | |
| | § | |
| | § | |
| AARON PETTY and JOHN SANDERS, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

The plaintiff, Keith Martin, survived after a police officer sitting inside a parked truck shot him four times through the truck's windshield.  Martin was reaching into his backpack, and the police officer allegedly thought that he was reaching for a gun.  The backpack turned out to be empty.  Martin sued the officer and the officer's partner, alleging violations of his constitutional rights under 42 U.S.C. § 1983 and asserting claims under Texas law.  The officers move for summary judgment. (Docket Entry No. 49).  Based on the motion, the record, and the applicable law, the court grants the motion.  The reasons are set out below.

## I.     Background

On January 9, 2020, the Houston Police Department and other law enforcement agencies planned to execute a narcotics sting operation in Southeast Houston. (Docket Entry No. 49-7 at ¶ 2).  The defendants, Officers Aaron Petty and John Sanders, were assigned to provide support from an unmarked pickup truck parked in a drugstore parking lot. (*Id.*).  The operation went awry when the plaintiff, Keith Martin, entered the parking lot and approached the truck.  Martin walked up to the driver's side of the truck and tried to peer through the windows, which were tinted.  (Docket

Entry No. 49-3 at 8–9).  Martin then moved to the front of the truck.  (*Id.* at 9).  The glare from the windshield prevented Martin from seeing into the vehicle.  (*Id.*).  He then circled around the truck bed and walked up along the passenger side.  (*See id.* at 9–10).  After pausing near the passenger door for several seconds, Martin walked around to the front of the truck.  (*Id.* at 10).  From this angle, he could see a man—Officer Sanders—dressed in plainclothes, sitting in the driver's seat.  (*Id.* at 11, 16).  The two made eye contact, and then Officer Sanders turned his head away from Martin.  (*See id.* at 11).  Martin also noticed another man—Officer Petty—in plainclothes, sitting in the passenger seat.  (*Id.* at 16).

Martin apparently tried to get the occupants' attention.  (*Id.* at 9–10).  He then took his backpack off, unzipped it, reached his right arm inside, and raised the backpack toward his chest.  (*Id.* at 12; Docket Entry No. 49-2 at 19:50; Docket Entry No. 49-5 at 6–7).  Officer Petty drew his weapon and fired four rounds at Martin through the truck's windshield.  (Docket Entry No. 49-7 at ¶¶ 7–8).  The bullets struck Martin in the chest, left arm, and head.  (Docket Entry No. 49-14 at 89).  Officer Petty got out of the truck and, keeping his gun trained on Martin, ordered him to lie down.  (Docket Entry No. 49-3 at 12–13; Docket Entry No. 49-7 at ¶ 8; Docket Entry No. 49-14 at 45).  Martin did so.  (Docket Entry No. 49-3 at 13).

Other officers arrived on the scene.  Martin was placed in handcuffs and his backpack was searched.  (*See* Docket Entry No. 49-14 at 45–46, 48–49).  It was empty.  The officers found Martin's cell phone on the hood of the truck.  (*Id.* at 38, 62).  Once the officers learned that Martin was unarmed, they removed the handcuffs.  (*Id.* at 49).  Martin was taken by ambulance to the hospital, where he was interviewed by Detective Robert Lujan.  (*Id.* at 33; Docket Entry No. 49-9 at ¶ 4).

Martin gave Detective Lujan different explanations for having reached into his backpack. Martin initially said that he thought the truck occupants were police officers who were going to arrest him, and that he reached into his backpack "to defend [him]self." (Docket Entry No. 49-6 at 7:40–8:15). Martin told Detective Lujan that he had figured out that the men in the truck were undercover police officers because Officer Sanders was white, and the truck was in a black neighborhood. (*Id.* at 16:00–16:40). Martin then told Detective Lujan that he had reached into his backpack for his cellphone. (*Id.* at 26:15–26:40). Finally, Martin told Detective Lujan that he had wanted to sell the truck occupants some car-detailing products—microfiber cloths and car wax— that he mistakenly thought were in his backpack. (*Id.* at 28:30–29:40). In Martin's deposition, he denied that he was trying to defend himself, explaining that he was trying to get Officer Sanders's phone number so that he could arrange to wash his truck later. (Docket Entry No. 49-3 at 11–12; Docket Entry No. 49-5 at 3).

There is no dispute that Martin circled the truck, stopped in front of the hood, reached into his backpack, raised it to his chest, and was shot through the windshield from inside the truck. What is disputed is how Martin had behaved before that and what he had said to the officers. The officers testified that Martin had been behaving aggressively—waving his arms, pounding on the hood, trying to open the truck's doors, and shouting at them—before he reached inside his backpack and raised it to his chest. (Docket Entry Nos. 49-7, 49-8). The officers testified that before Martin reached into his backpack, he said "I got something for you." (Docket Entry No. 49-7 at ¶ 5; Docket Entry No. 49-8 at ¶ 5). Martin denies all of this. The grainy and mute surveillance footage in the record neither confirms nor refutes it. It is undisputed that Martin had,

3

earlier that morning, smoked marijuana and phencyclidine,[1] and had consumed a 16-ounce beer. (Docket Entry No. 49-6 at 20:30–21:45; Docket Entry No. 49-5 at 5).

On January 10, 2020, Martin was charged with making a terroristic threat against Officer Petty, a misdemeanor.[2]  (Docket Entry No. 49-10).  On the same day, a warrant was issued for Martin's arrest on a separate charge of felony theft.  (Docket Entry No. 49-13).  Martin was arrested in the hospital the next day and brought to jail.  (*Id.*).  The arresting officer did not learn of the arrest warrant for felony theft until he arrived at the jail with Martin.  (Docket Entry No. 49-14 at 33).  On January 12, 2020, a magistrate judge found probable cause to hold Martin in custody pending trial.  (Docket Entry No. 49-11).  The terroristic-threat charge was dismissed in June 2020 as part of a plea agreement Martin entered in an unrelated case.  (Docket Entry No. 49-12).  The record is silent as to whether Martin was charged for felony theft.

Martin filed this action in November 2021, alleging violations of 42 U.S.C. § 1983 and of Texas law.  (Docket Entry Nos. 1, 8).  The court dismissed three of Martin's claims under Federal Rule of Civil Procedure 12(b)(6).  (Docket Entry No. 24).  The following claims remain: (1) excessive force under the Fourth Amendment; (2) unlawful arrest under the Fourth Amendment; (3) false arrest and false imprisonment under Texas common law; and (4) assault and battery under Texas common law.  The defendants move for summary judgment on the § 1983 claims based on qualified immunity.  They move for summary judgment on the Texas-law claims based on § 101.106(f) of the Texas Tort Claims Act, Texas Civil Practice & Remedies Code § 101.001 *et seq.*.

---

[1]  Phencyclidine, commonly called "PCP" or "angel dust," is a Schedule II controlled substance.  43 F.R. 3359 (Jan. 25, 1978).

[2]  An individual commits the offense of "terroristic threat" under § 22.07 of the Texas Penal Code when the individual "threatens to commit any offense involving violence to any person or property with intent to: . . . (2) place any person in fear of imminent serious bodily injury."

They assert that all Martin's claims are barred under *Heck v. Humphrey*, 512 U.S. 477 (1994). Martin has filed no response in opposition to summary judgment.

Based on the motion, the record, and the applicable law, the court grants the motion for summary judgment. (Docket Entry No. 49). The reasons are set out below.

## II.     Legal Standards

### A.     Summary Judgment

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th Cir. 2022) (quoting FED. R. CIV. P. 56(a)). "A fact is material if it might affect the outcome of the suit and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Thompson v. Microsoft Corp.*, 2 F.4th 460, 467 (5th Cir. 2021) (quoting reference omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion[] and identifying" the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"When 'the [nonmovant] bears the burden of proof at trial,' a party moving for summary judgment 'may merely point to the absence of evidence and thereby shift to the [nonmovant] the burden of demonstrating by competent summary judgment proof that there is [a dispute] of material fact warranting trial." *MDK S.R.L. v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022) (quoting reference omitted). "However[,] the movant 'need not negate the elements of the nonmovant's case.'" *Terral River Serv., Inc. v. SCF Marine Inc.*, 20 F.4th 1015, 1018 (5th Cir. 2021) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per

curiam)).  "If 'reasonable minds could differ' on 'the import of the evidence,' a court must deny the motion." *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986)).

After the movant meets the Rule 56(c) burden, "the [nonmovant] must come forward with 'specific facts' showing a genuine factual issue for trial." *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021) (quoting references omitted).  The nonmovant "must identify specific evidence in the record and articulate the 'precise manner' in which th[e] evidence" aids their case. *Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021) (quotation marks and quoting reference omitted).  All reasonable inferences are drawn in the nonmovant's favor, *Loftin v. City of Prentiss*, 33 F.4th 774, 779 (5th Cir. 2022), but a nonmovant "cannot defeat summary judgment with 'conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.'"  *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 368 (5th Cir. 2021) (quoting reference omitted).  The court must not make credibility determinations on summary judgment. *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 245 (5th Cir. 2016).  Instead, the court "must disregard all evidence favorable to the moving party that the finder of fact is not required to believe." *Id.* (quoting reference omitted) (alterations adopted).  The nonmovant's version of events must be accepted if supported by more than a mere scintilla of evidence.  *See id.*

When the nonmovant files no response in opposition to summary judgment, the statements of facts in the motion for summary judgment and the evidence attached may be taken as undisputed.  *See Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988); *Morgan v. Fed. Exp. Corp.*, 114 F. Supp. 3d 434, 437 (S.D. Tex. 2015).  The nonmovant's unsworn pleadings are not competent summary judgment evidence.  *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  The court is not obligated to "sift through the record in search of evidence"

to defeat the motion for summary judgment. *Morgan*, 114 F. Supp. 3d at 437 (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994)). Even when no opposition is filed, the movant must still meet the burden to show that there is no genuine issue of material fact and that summary judgment is appropriate. *See Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n.3 (5th Cir. 1995); *Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002).

### B.     Qualified Immunity

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine is meant to give officers "breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (quoting reference omitted).

Determining whether qualified immunity applies requires two inquiries. The first is whether the officer violated a constitutional right. *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019). The second is whether the right was clearly established at the time the officer acted. *Id.* The court can decide "one question or both." *Id.*

A right can be clearly established without "a case directly on point." *Collie v. Barron*, 747 Fed. App'x. 950, 954 (5th Cir. 2018) (unpublished) (per curiam) (quoting *Kisela v. Hughes*, 584 U.S. ----, 138 S. Ct. 1148, 1152 (2018)). A prior case involving "materially similar" facts is not required. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Instead, the question is whether prior decisions "gave reasonable warning" that the defendant's conduct violated constitutional rights. *Id.* at 740. In rare cases, reasonable warning may come from "a general constitutional rule" previously identified when the rule "appl[ies] with obvious clarity to the specific conduct in

question, even though the very action in question has not previously been held unlawful." *Id.* at

741 (quotation marks and quoting reference omitted) (alteration adopted); *see also D.C. v. Wesby*,

583 U.S. 48, 64 (2018).

Inquiring into whether a right is clearly established may not be conducted "at a high level

of generality." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). Courts must ask "whether the violative

nature of *particular* conduct is clearly established." *Id.* (quoting *Brosseau v. Haugen*, 543 U.S.

194, 198 (2004) (per curiam)). The constitutional question must be framed "with specificity and

granularity." *Cunningham v. Castloo*, 983 F.3d 185, 193 (5th Cir. 2020) (quoting reference

omitted). This is especially important in the Fourth Amendment context, in which "it is sometimes

difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply

to the factual situation the officer confronts." *Saucier v. Katz*, 533 U.S. 194, 205 (2001). In the

excessive-force context, "officers are entitled to qualified immunity unless existing precedent

'squarely governs' the specific facts at issue." *Batyukova v. Doege*, 994 F.3d 717, 726 (5th Cir.

2021) (quoting *Kisela*, 138 S. Ct. at 1153). "[T]he law must be *so* clearly established that—in the

blink of an eye, in the middle of a high-speed chase—every reasonable officer would know it

immediately." *Morrow*, 917 F.3d at 876 (citation omitted). The Supreme Court has "stressed the

need to identify a case where an officer acting under similar circumstances was held to have

violated the Fourth Amendment." *Wesby*, 583 U.S. at 64 (quotation marks omitted and alterations

adopted). The principle that deadly force is permitted when the suspect poses an immediate threat

of serious harm will satisfy the clearly-established prong only in "obvious case[s]." *White v. Pauly*,

580 U.S. 73, 80 (2017); *see also Cole v. Carson*, 935 F.3d 444, 453 (5th Cir. 2019).

Once qualified immunity is invoked, it is the plaintiff's burden to show that it does not

apply. *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010). When a plaintiff fails to cite

"adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful," summary judgment is appropriate. *Cunningham*, 983 F.3d at 191, 194 (quoting reference omitted); *see also Cass v. City of Abilene*, 814 F.3d 721, 732–33 (5th Cir. 2016).

## III.  Analysis

### A.  Excessive Force

The elements of an excessive force claim under the Fourth Amendment are: "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Trammell v. Fruge*, 868 F.3d 332, 340 (5th Cir. 2017) (quoting reference omitted).  This analysis "turns on the facts of each case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Hale v. City of Biloxi*, 731 Fed. App'x 259, 262 (5th Cir. 2018) (quotation marks and quoting reference omitted).

Qualified immunity applies to the use of deadly force when an officer has an objectively reasonable basis to believe that a suspect poses an imminent threat of serious harm to the officer or others. *Carnaby v. City of Houston*, 636 F.3d 183, 188 (5th Cir. 2011).  Officers are not required to "wait until a defendant turns towards them, with weapon in hand, before applying deadly force to ensure their safety." *Garcia v. Blevins*, 957 F.3d 596, 602 (5th Cir. 2020) (quoting *Salazar-Limon v. City of Houston*, 826 F.3d 272, 279 n.6 (5th Cir. 2016), *as revised* (June 16, 2016)). When officers "reasonably believe the individual is reaching for a gun," deadly force is justified, even if the officers "had not yet seen a gun when they fired, or when no gun was ever found at the scene." *Cloud v. Stone*, 993 F.3d 379, 387 (5th Cir. 2021).  "To show a triable issue, a plaintiff

must generally present competent summary judgment evidence that the arrestee did not reach for what the officer reasonably perceived to be a weapon." *Id.* (quotation marks and quoting reference omitted) (alterations adopted); *see also Allen v. Hays*, 65 F.4th 736, 744 (5th Cir. 2023) ("The question is whether the officer's belief that he saw a gun was sufficiently reasonable to justify the use of deadly force in light of all the surrounding circumstances.").

The reasonableness of the use of deadly force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009) (quoting *Graham v. Connor*, 490 U.S. 386, 396– 97 (1989)).  Courts consider "not only the need for force, but also the relationship between the need and the amount of force used." *Allen*, 65 F.4th at 744; *see Baker v. Putnal*, 75 F.3d 190, 198 (5th Cir. 1996) ("The number of shots [*i.e.*, four] and the nature of the wounds raise[d] a serious question as to the reasonableness of [the officer's] conduct.").

The officers argue that Officer Petty acted reasonably in shooting Martin four times through the windshield because Martin "was growing increasingly agitated and angry" and said "I got something for you" before reaching into his backpack and raising it to chest level.  (Docket Entry No. 49 at 12–13).  According to the officers, "the totality of [] Martin's actions" made it reasonable for them to believe that he was about to shoot them through the bottom of his backpack. (*Id.* at 13).

There is, however, summary judgment evidence favorable to Martin, and all reasonable inferences from this evidence must be drawn in his favor.  In his interview with Detective Lujan and his deposition testimony, Martin denied touching the truck, raising his voice, or behaving aggressively before he was shot.  (Docket Entry No. 49-6 at 32:15–32:35; Docket Entry No. 49-3 at 9, 11).  He also denied saying "I got something for you."  (Docket Entry No. 49-6 at 24:20–

24:50; Docket Entry No. 49-5 at 9).  The court cannot make credibility determinations at this stage

and must resolve disputed evidence in favor of Martin, the nonmovant.  *Heinsohn*, 832 F.3d at

245.  Applying this framework, the question is whether the evidence shows that, as a matter of

law, Officer Petty reasonably believed that Martin presented an imminent threat of serious harm

when, after circling the truck and making momentary eye contact with Officer Sanders, Martin

removed his backpack and reached inside it as he raised it toward his chest.

Two things set this case apart from other cases finding qualified immunity when an officer,

reasonably believing that a suspect was reaching for a weapon, uses deadly force.  First, a person

reaching into a backpack and raising it to chest level is not enough to create a reasonable belief

that the person is about to fire a gun through the backpack.  Martin could have been reaching into

or searching his backpack for any number of things besides a gun.  The officers rely on Martin's

"agitation" and his statement that "I got something for you" to justify a belief in imminent danger,

but those facts are disputed.  Second, Martin had not defied or ignored any police commands.  The

officers had not given Martin any commands before the shots were fired.  And they had not

revealed that they were police officers.  Although the officers stated in their affidavits that they

"figured [Martin] would know we were police" because Martin saw Officer Petty on the police

radio, (Docket Entry No, 49-8 at ¶ 5; *see* Docket Entry No. 49-7 at ¶ 5), Martin denied having been

in a position to see the radio, (Docket Entry No. 49-3 at 16).  Viewing the record in the light most

favorable to Martin, the officers lacked sufficient basis to reasonably believe that Martin posed an

imminent threat of serious harm.

The three cases that the officers cite are distinguishable.  In *Kelly v. City of Houston*, the

Fifth Circuit held that an officer who shot the plaintiff's daughter reasonably believed that the

daughter was holding a gun inside her fanny pack.  268 F.3d 1064, 2001 WL 878051, at *1 (5th

Cir. 2001) (unpublished) (per curiam).  Unlike this case, however, the officer in *Kelly* had been

told that the daughter "intended to kill herself" and "either had a gun or was on her way to find a

gun," and the daughter "refused to put the fanny pack down despite all of the officers' requests

and . . . held, aimed, and made shooting motions with the object she carried as though she were

aiming and shooting a gun directly at [the officer]." *Id.*

The officers also cite *Ontiveros*, 564 F.3d at 381, which involved a SWAT team executing

an arrest warrant on suspects who were known to be armed and dangerous.  The suspects had,

earlier that day, appeared armed at the house of people with whom they were feuding, pistol-

whipped them, threatened to kill them, and pointed guns at them.  *Id.*  One of the SWAT officers

kicked the suspect's bedroom door down and shouted several times, "Let me see your hands."  *Id.*

Instead of complying, the suspect moved behind the door, and reached into a boot held at chest

level.  The officer shot him.  *Id.*  The Fifth Circuit held that the officer acted reasonably, noting

that "this court has upheld the use of deadly force where a suspect moved out of the officer's line

of sight and could have reasonably been interpreted as reaching for a weapon." *Id.* at 385 (citing

*Reese v. Anderson*, 926 F.2d 494 (5th Cir. 1991); *Young v. City of Killeen*, 775 F.2d 1349 (5th Cir.

1985)).

In *Collie*, 747 Fed. App'x at 950–51, two officers entered the parking lot of an apartment

complex at night in response to a reported robbery.  The officers had been told that the suspect

was a shirtless black man with a silver gun.  *Id.* at 951.  When the officers entered the parking lot,

they saw a shirtless black man walking with his hands in his pockets.  *Id.*  The man ignored the

officers' commands to stop and kept walking, then suddenly "removed his hand from his pocket

and swung it upward and over in the direction of [one of the officers]." *Id.*  The officer, thinking

he saw "the glint of a gun," shot the man twice. *Id.* The Fifth Circuit held that the officer acted reasonably. *Id.* at 953–54.

In each of these cases, the officers had reasons to believe they were dealing with armed and dangerous suspects, and the officers had given verbal commands that the suspects disobeyed before the officers used deadly force. In this case, by contrast, Officer Petty's reason for believing that Martin was reaching for a gun was that he had thrust his hand into his backpack and raised the backpack to his chest. Officer Petty also relies on the officers' disputed testimony that Martin had been acting in an "agitated" and "angry" manner as he walked around to the front of the truck. The officers do not describe any verbal exchange with, or explicit threats from, Martin as they were sitting inside the locked truck, and the record evidence does not support finding any. Besides Martin's reach into his backpack, his disputed "agitation," and his disputed "I got something for you" statement, there were no "other factors that led the officer[s] to suspect that the victim would resort to violence." *Allen*, F.4th at 744. The officers had not given Martin verbal commands that he had refused to follow. These factors distinguish this case from other Fifth Circuit cases finding that an officer used reasonable force based on a reasonable fear that the suspect was reaching for a gun. *See, e.g.*, *Batyukova*, 994 F.3d at 726; *Cloud*, 993 F.3d at 387; *Garcia*, 957 F.3d at 602; *Francis v. Garcia*, 702 Fed. App'x. 218, 222 (5th Cir. 2017); *Orr v. Copeland*, 844 F.3d 484, 493 (5th Cir. 2016); *Salazar-Limon*, 826 F.3d at 279 (5th Cir. 2016); *Thomas v. Baldwin*, 595 Fed. App'x. 378, 381 (5th Cir. 2014); *Manis v. Lawson*, 585 F.3d 839, 844 (5th Cir. 2009); *Reese*, 926 F.2d at 501–02; *Young*, 775 F.2d at 1351.

The question under the second qualified-immunity prong is whether it was clearly established, such that any reasonable officer would know, that it would be illegal to shoot Martin under the circumstances. The undisputed evidence as to the circumstances is that Martin had

13

circled the unmarked truck and had seen two men in plainclothes in the front seat before taking off his backpack and reaching inside.  The question is whether, when Officer Petty shot Martin, there was either (1) a case or "body of relevant case law" in which "an officer acting under similar circumstances was held to have violated the Constitution," or if (2) this was one of those "rare obvious case[s] where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances."  *Batukova*, 994 F.3d at 726 (first quoting *Joseph on Behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319, 330 (5th Cir. 2020), then quoting *Wesby*, 138 S. Ct. at 590) (quotation marks omitted and alterations adopted)).

Martin has not identified a case or line of cases presenting closely similar facts or circumstances.  As discussed above, the cases in this Circuit in which officers claimed to have reasonably believed that a suspect was reaching for a deadly weapon involve facts on two ends of a spectrum.  The cases at one end involve a noncompliant suspect who clearly posed an imminent danger.  *See* cases cited at p.13, *supra*.  The cases at the other end of the spectrum involve incapacitated suspects who did not pose an imminent danger.  *See, e.g.*, *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 277 (5th Cir. 2015).  This case is neither.

This case is also not one in which the violation is so obvious under general excessive-force principles that factually similar precedents are unnecessary.  Martin was not incapacitated when Officer Petty fired the shots.  *Compare Mason*, 806 F.3d at 278 ("A reasonable jury could conclude that when [the officer] fired the final two shots, [the plaintiff] would have appeared incapacitated to an objectively reasonable officer.").  Martin was clearly aware of the officers' presence, was facing them, and was reaching into his backpack when Officer Petty shot him.  *Compare Cole*, 935 F.3d at 455 (deadly force was obviously unconstitutional when the officer, without warning, shot a suspect who was facing away from him).

14

Even taking the disputed facts in Martin's favor, the record does not establish that Officer

Petty's use of force was clearly unconstitutional.   Summary judgment is appropriate.   *See*

*Cunningham*, 983 F.3d at 194; *Cass*, 814 F.3d at 732–33.

### B.        Unlawful Arrest

An arrest without probable cause violates the Fourth Amendment.   *Haggerty v. Tex. S.*

*Univ.*, 391 F.3d 653, 655 (5th Cir. 2004).   Probable cause exists "when the totality of the facts and

circumstances within a police officer's knowledge at the moment of arrest are sufficient for a

reasonable person to conclude that the suspect had committed or was committing an offense." *Id.*

at 655–56 (quoting *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001)).   An officer who

reasonably but mistakenly believes probable cause supports an arrest is entitled to qualified

immunity.   *Id.* (quoting *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000)).   Qualified

immunity applies unless there is "not even arguably [] probable cause for the arrest." *Id.* (quoting

*Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001)) (alterations adopted).

The independent-intermediary doctrine provides a defense to an unlawful-arrest claim.   "It

is well settled that if facts supporting an arrest are placed before an independent intermediary such

as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false

arrest, insulating the initiating party." *Arizmendi v. Gabbert*, 919 F.3d 891, 897 (5th Cir. 2019)

(quoting reference omitted).   An exception exists when "the plaintiff shows that the deliberations

of the intermediary were in some way tainted by the actions of the defendant." *Id.* (quotation

marks and quoting reference omitted).   "[E]ven if an independent magistrate approves a warrant

application, a defendant's Fourth Amendment rights are violated if (1) the affiant, in support of

the warrant, includes a false statement knowingly and intentionally, or with reckless disregard for

the truth, and (2) the allegedly false statement is necessary to the finding of probable cause." *Id.*

(quotation marks and quoting reference omitted).  It is the plaintiff's burden to establish that the intermediary's deliberations were tainted.  *Buehler v. City of Austin/Austin Police Dep't*, 824 F.3d 548, 557 (5th Cir. 2016).

The officers argue that the magistrate judge's determination on January 12, 2020, that probable cause existed to detain Martin pending trial "breaks the chain of causation for false arrest" under the independent-intermediary doctrine.  (Docket Entry No. 14 at 17–18).  The court agrees and does not reach the question of whether the arrest was supported by arguable probable cause.

Martin alleges that the officers "intentionally made false statements to justify their arrest . . . , demonstrating malice and an intent to inflict harm [on] Martin."  (Docket Entry No. 8 at ¶ 130).  Martin's counsel stated at the summary judgment hearing that "we are alleging that the officers made false statements in order to secure that probable cause finding [from the magistrate judge]."  The record does not allow the conclusion that the magistrate judge's deliberations were tainted by the defendant officers.  The record is silent as to what documents were before the magistrate judge.  Both defendant officers state in their affidavits that they "did not testify before any magistrate or grand jury about this incident."  (Docket Entry No. 49-7 at ¶ 9; Docket Entry No. 49-8 at ¶ 9).  The record fails to show that the magistrate judge's probable-cause finding was tainted.  Summary judgment is appropriate as to the unlawful-arrest claim.

### C.  State-Law Torts

The officers argue that Martin's state-law tort claims are barred under § 101.106(f) of the Texas Tort Claims Act.  That Act waives governmental immunity in some respects, and also "discourage[s] or prevent[s] recovery against [] [government] employee[s]."  *Franka v. Velasquez*, 332 S.W.3d 367, 384 (Tex. 2011).  Under § 101.106, "the plaintiff must elect to sue either the governmental unit or the employee in his individual capacity."  *Pardo v. Iglesias*, 672 S.W.3d 428,

16

432 (Tex. App.—Houston [14th Dist.] 2023), *reconsideration en banc denied*, 2023 WL 4188343

(Tex. App.—Houston [14th Dist.] June 27, 2023, no pet.).   Section 101.106(f) applies when a

plaintiff "files suit against only the employee in the employee's individual capacity, but the suit is

actually based on conduct within the general scope of the employee's employment and could have

been brought against the governmental unit . . . ."   *Id.*   In that situation, "the suit is considered to

be against the employee in his official capacity only, and the employee must [] be dismissed on a

proper motion."   *Id.*

> Section § 101.106(f) provides:
>
> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only.   On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

Defendants raising § 101.106(f) must establish that: (1) the officers were employees of a

governmental unit; (2) the suit against them is based on conduct within the general scope of their

employment; and (3) the suit could have been brought against the governmental unit.   *Pardo*, 672

S.W.3d at 432–33.

The first element is satisfied.   A governmental unit means "a political subdivision of

[Texas], including any city. . . ."   § 101.001(3)(B).   It is undisputed that the defendants were

employed by the City of Houston Police Department at the time of the events at issue.   Employees

of a city police department are employees of a governmental unit.   *See Pardo*, 672 S.W.3d at 433.

The second element is also satisfied.   "Scope of employment" means "the performance for

a governmental unit of the duties of an employee's office or employment and includes being in or

about the performance of a task lawfully assigned to an employee by competent authority."   §

17

101.001(5).  Conduct satisfies this definition for purposes of § 101.106(f) when "a connection

exists between the employee's job duties and the alleged tortious conduct."  *Pardo*, 672 S.W.3d at

433 (quoting *Laverie v. Wetherbe*, 517 S.W.3d 748, 753 (Tex. 2017)) (alterations adopted).  When

Martin entered the parking lot on January 9, 2020, the officers were participating in an undercover

sting operation, performing official duties.  *See id.* ("An officer has a duty to preserve the peace

within his jurisdiction.  He also has a duty to prevent the commission of an offense.") (citing Tex.

Code Crim. Proc. arts. 2.13(a), 6.06).

The record undermines Martin's argument, made through counsel at the summary

judgment hearing, that Officer Petty was "acting as a citizen in self-defense" and was not carrying

out his "duties as a police officer."  It is undisputed that the officers were on-duty and executing

an official police operation.  And even if they had been off-duty, "a police officer's off-duty status

is not a limitation upon the discharge of police authority in the presence of criminal activity.  If an

off-duty officer observes a crime, as a matter of law he becomes an on-duty officer."  *Id.* (quoting

*Garza v. Harrison*, 574 S.W.3d 389, 402–03 (Tex. 2019)).

Finally, the third element is satisfied.  A claim can be brought under the Texas Tort Claims

Act if the claim "is in tort and not under another statute that independently waives immunity."

*Franka*, 332 S.W.3d at 381; *see also Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653,

659 (Tex. 2008) (holding that all tort theories of recovery alleged against a governmental unit are

presumed to be under the Texas Tort Claims Act).  A suit could have been brought under the Act

"regardless of whether the Act waives immunity from suit."  *Franka*, 332 S.W.3d at 385.  Martin's

state-law claims all sound in tort under Texas common law.  The claims are not statutory.  They

"could have been brought under [the Act]" within the meaning of § 101.106(f).  The claims need

not be legally viable against the City for § 101.106(f) to apply.  *See id.*

18

The officers are entitled to summary judgment on Martin's state-law claims under §

101.106(f).  The court need not reach the officers' argument that the state-law claims are barred

by official immunity.

### D.        *Heck v. Humphrey*

The officers argue that all of Martin's claims are barred by the Supreme Court's decision

in *Heck v. Humphrey*, 512 U.S. 477 (1994).  (Docket Entry No. 49 at 23–24).  This follows, they

argue, from the fact that "Martin's charges were dismissed in exchange for a guilty plea on an

unrelated charge."  (*Id.* at 24).  Because the court finds the officers' other arguments meritorious,

it need not reach the *Heck* argument.  Nonetheless, *Heck* is inapplicable.

*Heck* holds that "a civil tort action, including an action under section 1983, is not an

appropriate vehicle for challenging the validity of outstanding criminal judgments."  *DeLeon v.*

*City of Corpus Christi*, 488 F.3d 649, 652 (5th Cir. 2007).  "When a plaintiff alleges tort claims

against his arresting officers, 'the district court must first consider whether a judgment in favor of

the plaintiff would necessarily imply the invalidity of his *conviction or sentence*.'"  *Id.* (quoting

*Hainze v. Richards*, 207 F.3d 795, 798 (5th Cir. 2000)).  "If so, the claim is barred unless the

plaintiff demonstrates that the conviction or sentence has been reversed on direct appeal, expunged

by executive order, declared invalid by a state tribunal authorized to make such a determination,

or called into question by a federal court's issuance of a writ of habeas corpus under 28 U.S.C. §

2254."  *Id.*  The *Heck* bar prevents a civil plaintiff from "collaterally attacking [his] underlying

conviction."  *Brown v. City of Houston*, 297 F. Supp. 3d 748, 758 (S.D. Tex. 2017).

Martin's charge for making a terroristic threat was dismissed when he pleaded guilty to an

unrelated charge.  (Docket Entry No. 49-12).  Martin was not convicted or sentenced on the

terroristic-threat charge or any related charge.  The officers have not demonstrated that a judgment

19

in Martin's favor in this suit would be inconsistent with Martin's criminal conviction or sentence. *Heck* does not apply.

## IV.     Conclusion

The motion for summary judgment, (Docket Entry No. 49), is granted.

SIGNED on October 19, 2023, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge